IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMERCIAL OFFICE FURNITURE COMPANY, INC., t/a COFCO OFFICE FURNISHINGS, INC., | Case No. 2:20-cv-04713 |
| *Plaintiff*, | |
| v. | |
| THE CHARTER OAK FIRE INSURANCE COMPANY, | |
| *Defendant*. | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

Richard D. Gable, Jr. (Pa. ID No. 65842)
Butler Weihmuller Katz Craig LLP
1818 Market Street
Suite 2740
Philadelphia, PA 19103
Tel: 215-405-9191
Fax: 215-405-9190
E-mail: rgable@butler.legal

Gregory P. Varga (*pro hac vice application forthcoming*)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103
Tel: 860-275-8200
Fax: 860-275-8299
E-mail: gvarga@rc.com

Defendant The Charter Oak Fire Insurance Company ("Charter Oak"), hereby submits this memorandum of law in support of its Motion to Dismiss the Complaint ("Complaint" or "Compl.," DE 1-1).

## I.    INTRODUCTION

Plaintiff Commercial Office Furniture Company, Inc. t/a COFCO Office Furnishings, Inc. is an office furniture retailer that operates from locations in Philadelphia, Pennsylvania, and the District of Columbia.  Plaintiff is among the thousands of businesses across the country that claim financial losses due to the proliferation of the novel coronavirus known as "SARS-CoV-2" ("Coronavirus") and the deadly disease it causes, COVID-19. Plaintiff does not claim that Coronavirus was in any of its business locations; in fact, it insists the virus <u>did not</u> enter any of its facilities. Rather, Plaintiff alleges that it was forced to close its furniture showrooms to the public due to a series of executive orders issued by government officials in Pennsylvania and the District of Columbia to combat the further spread of Coronavirus and promote public health (collectively the "Orders").

In this action, Plaintiff claims that the business income losses and expenses it incurred because of Coronavirus and the Orders are covered by a commercial property insurance policy issued by Charter Oak (the "Policy"), and that Charter Oak wrongfully refused to pay its claim. In its two-count Complaint, Plaintiff seeks a judgment declaring that the Policy obligates Charter Oak to pay for Plaintiff's alleged losses and expenses, and damages for Charter Oak's alleged breach of the insurance contract.

The Complaint fails to state a claim upon which relief can be granted and should be dismissed because it does not plausibly allege Plaintiff's entitlement to coverage under the Policy's

Business Income, Extra Expense or Civil Authority provisions. Specifically, the Complaint fails to establish a right to coverage for at least the following reasons:

*First,* for Business Income and Extra Expense coverage to apply, there must be, (1) direct physical loss of or damage to property at the insured premises caused by a Covered Cause of Loss (*i.e.,* a risk not excluded by the Policy); and (2) a necessary suspension of Plaintiff's operations caused by that physical loss or damage. The Complaint alleges no facts indicating that any property at the insured premises sustained any physical loss or damage, and attributes the partial interruption of Plaintiff's business to the Orders, not to any physical loss of or damage to its property.

*Second,* Plaintiff fails to plead facts supporting its entitlement to Civil Authority coverage, which applies where damage to property at a location other than the insured premises causes a civil authority to issue an order prohibiting access to the insured premises, and where the damage is caused by a covered cause of loss. Just as the Complaint fails to allege any direct physical loss of or damage to property <u>at</u> the insured premises, it also pleads no such damage at any location <u>away from</u> the insured premises. Nor does Plaintiff allege that any of the Orders was issued as a result of and in response to existing damage to property. Indeed, Plaintiff concedes that government officials restricted the operations of "brick and mortar" businesses like Plaintiff's in order "to curtail the spread of COVID-19 across the Commonwealth" and prevent future loss of human life.

Plaintiff's failure and inability to plead the essential elements of Business Income, Extra Expense and Civil Authority coverage are fatal to its claims for breach of contract and declaratory relief. But even if Plaintiff had pled facts to support coverage under those provisions, dismissal of the Complaint still would be warranted because the losses alleged by Plaintiff fall squarely within the Policy's virus exclusion and other exclusions applicable to the Orders.

## II.     PROCEDURAL HISTORY AND ALLEGED FACTS

### A.     This Lawsuit

The Complaint alleges that Plaintiff is a Philadelphia-based retailer of office furniture. It operates from an office/warehouse in Philadelphia and from separate showroom and warehouse locations in the District of Columbia.  (Compl, ¶¶ 1, 20). In March 2020, Plaintiff "was doing a substantial business" until it was "forced to close its showrooms to the public" and was left only "to sell its products and services over the phone or online." (*Id.*, ¶ 21). According to the Complaint, Plaintiff closed its showrooms in response to Orders by Pennsylvania Governor Tom Wolf, Philadelphia Mayor Jim Kenney, and District of Columbia Mayor Muriel Bowser that were issued "in response to the novel 2019 novel coronavirus disease (COVID-19)" and to "curtail the spread of COVID-19." (*Id.*, ¶¶ 11-18, 21). The Complaint identifies the following Orders:[1]

- Governor Wolf's March 6, 2020 Proclamation of Disaster Emergency, (Compl., ¶ 11) (Ex. B hereto);

- Governor Wolf's March 16, 2020 announcement that Pennsylvania "was imposing mitigation efforts to curtail the spread of COVID-19 across the Commonwealth," (Compl., ¶ 12);

- Mayor Kenney's March 16, 2020 order that required "all nonessential businesses shut down," (Compl., ¶ 13);

- Mayor Kenney's March 17, 2020 order that "prohibit[ed] the operation of non-essential businesses," (Compl., ¶ 14) (Ex. C hereto);

- Governor Wolf's March 19, 2020 order requiring "all non-life-sustaining businesses in Pennsylvania to close their physical locations," which is alleged to have prohibited Plaintiff from operating, (Compl., ¶ 16) (Ex. D hereto);

---

[1] The Court can properly consider the Orders in ruling on this motion to dismiss because they are referenced in and relied upon in the Complaint, and because they are the subject of judicial notice under Fed. R. Evid. 201(b), (d). *See Buck v. Hampton Tp. School Dist.*, 452 F.3d 256, 260 (3rd Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case." (citations, alterations, and internal quotation marks omitted)).

4

- Mayor Kenney's March 22, 2020 order that prohibited "the operation of non-essential businesses/activities in Philadelphia," (Compl., ¶ 17) (Ex. E hereto);

- Mayor Bowser's order that "all non-essential businesses would be required to close, and that gatherings of more than ten people would be prohibited," (Compl., ¶ 18) (Ex. F hereto);

Plaintiff alleges its business has been "cut in half" since March 2020, and that "[t]he diminishment of [Plaintiff's] business is the result of the Orders" issued to stop the spread of Coronavirus. (Compl., ¶¶ 22, 24).

Plaintiff does not allege that Coronavirus was present in any of its warehouse or showroom locations. Nor does the Complaint suggest that any property located at any of its locations sustained any form of physical loss or physical damage.

The Complaint alleges that Plaintiff purchased the Policy from Charter Oak bearing policy number Y-630-0L121515-COF-19, for the policy period June 29, 2019 to June 29, 2020. (*Id.*, ¶ 6).[2] The Policy insures property at four locations listed in its Location Schedule: two warehouses in Philadelphia, a showroom/warehouse in the District of Columbia, and a showroom in Annapolis, Maryland. (Ex. A, p. 10 of 159).[3] The Complaint further alleges that the Policy insures the buildings and business personal property at those locations, and also provides Business Income,

_____

[2] A certified copy of the Policy is attached hereto as Exhibit A. All references to page numbers of the Policy correspond to the "Travelers Doc Mgmt." number that appears in the bottom margin, right-hand side of each page of Exhibit A. Although Plaintiff did not attach the Policy to its Complaint, the Court can properly consider it in ruling on this motion to dismiss because it is repeatedly referred to in the Complaint and because Plaintiff's causes of action are based on it. *See Toner v. GEICO Ins. Co.*, 262 F. Supp. 3d 200, 206 n.3 (E.D. Pa. 2017) ("In a breach of contract claim involving an insurance policy, the insurance policy at issue may be considered because the plaintiff's claims are based on that document.); *Borough of Moosic v. Darwin Nat. Assur. Co.*, 556 Fed. App'x. 92, 95 (3d Cir. 2014) (the district court did not err in considering an insurance policy in a motion to dismiss that was not attached to a complaint).

[3] The Annapolis location is not referenced in the Complaint, and Plaintiff seeks no insurance coverage in relation to it.

Extra Expense, and Civil Authority coverage.  (Compl., ¶ 9). It is further alleged that "Charter Oak has denied coverage" for the losses claimed by Plaintiff. (*Id.*, ¶ 29).

Plaintiff commenced this lawsuit against Charter Oak in the Court of Common Pleas of Philadelphia County on August 19, 2020.  Charter Oak timely removed the action to this Court on September 25, 2020.

## III.    LEGAL STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, which, if accepted as true, "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff "must plead more than labels and conclusions," and "[f]actual allegations must be enough to raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A court deciding a motion to dismiss under Rule 12(b)(6) must "accept[] all of the complaint's well-pleaded facts as true." *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016). Excepted from this presumption of truth are any "legal conclusions" couched as factual allegations, *id.*, and any allegations in the complaint which are "contradicted by the documents attached to the complaint," *Brightwell v. Lehman*, 2006 WL 931702, *3 (W.D. Pa. Apr. 10, 2006); *Johnson v. Dollinger*, 2019 WL 1596340, at *6 n.6 (E.D. Pa. Apr. 12, 2019) ("[A]llegations in the complaint that contradict facts of which the court may take judicial notice do not need to be accepted as true" in deciding a motion to dismiss.).

Under Pennsylvania law,[4] the language of an insurance policy "must be construed in its plain and ordinary sense, and the policy must be read in its entirety." *Pennsylvania Nat. Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1, 14 (Pa. 2014). "When the language of an insurance policy is plain and unambiguous, a court is bound by that language." *Id.* Moreover, "policy terms should be read to avoid ambiguities," and "a court cannot rewrite the terms of a policy or give them a construction in conflict with the accepted and plain meaning of the language of the policy." *Imperial Cas. & Indem. Co. v. High Concrete Structures, Inc.*, 858 F.2d 128, 131 (3d Cir. 1988); *see also Guardian Life Ins. Co. of Am. v. Zerance*, 479 A.2d 949, 953 (Pa. 1984) ("We may not rewrite the insurance contract, under the guise of judicial interpretation, to expand the coverage beyond that as provided in the policy.").

## IV.   ARGUMENT

The Court should dismiss the Complaint in its entirety because it fails to state a claim against Charter Oak that is plausible on its face. To plead a cause of action for breach of contract, a plaintiff must allege facts sufficient to show, (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages. *See Williams v. Nationwide Mut. Ins. Co.*, 740 A.2d 881, 884 (Pa. Super. 2000). Where the Complaint fails to

---

[4] Pennsylvania law applies here. This Court, sitting in diversity jurisdiction, applies the choice of law rules of the forum state, i.e., Pennsylvania. *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017). Pennsylvania applies "the law of the state having the most significant contacts or relationships with the contract," *Nationwide Mut. Ins. Co. v. West*, 807 A.2d 916, 921 (Pa. Super. Ct. 2002). In insurance coverage disputes, Pennsylvania courts give the principal location of the insured risk "greater weight than any other single contact." *Triangle Publications, Inc. v. Liberty Mut. Ins. Co.*, 703 F. Supp. 367, 370 (E.D. Pa. 1989) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193, cmt. b). Here, Plaintiff is a Pennsylvania corporation with its principal place of business located in Pennsylvania, (Compl., ¶ 1), the Policy was issued to Plaintiff at an address in Pennsylvania, (Ex A, pp. 2-3 of 159), and the Complaint asserts that Plaintiff "is a Philadelphia-based office furniture company that also has a showroom and warehouse in the District of Columbia." (Compl., ¶ 20); (Ex. A, pp. 2, 10 of 159 (providing the Policy's Location Schedule, which identifies two Pennsylvania locations, one Maryland location, and one District of Columbia location)). Pennsylvania has the most significant contacts with the parties, their contract, and the subject matter of their dispute.

allege facts supporting the conclusion that the contract imposed a duty on the defendant, there can be no breach. The absence of factual allegations supporting a duty to perform is also fatal to a claim for declaratory judgment on the contract.

The facts alleged in the Complaint demonstrate, as a matter of law, that Plaintiff is not entitled to Business Income, Extra Expense or Civil Authority coverage under the Policy, such that the Policy imposes no duty to pay upon Charter Oak.  Specifically, the Complaint fails to allege facts sufficient to support the elements of any of the coverages Plaintiff seeks. In addition, Plaintiff alleges losses caused by risks that are expressly excluded by the Policy.  Because Plaintiff is not entitled to coverage, it cannot establish that Charter Oak has breached the Policy and is not entitled to declaratory or other relief. Accordingly, the Complaint should be dismissed with prejudice.

### A.    Plaintiff Is Not Entitled to Business Income Or Extra Expense Coverage As A Matter of Law

The Complaint alleges that Plaintiff is entitled to coverage under the Policy's Business Income and Extra Expense provisions for the economic effects of a business interruption it attributes to Coronavirus and the Orders. Charter Oak is not liable for Plaintiff's alleged losses because the Complaint fails to allege the essential elements of these coverages.

The Business Income and Extra Expense coverages are found in the Policy's Deluxe Business Income (And Extra Expense) Coverage Form and provide, in relevant part, as follows:

### A.    COVERAGE

We will pay for:

- The actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration"; and

- The actual Extra Expense you incur during the "period of restoration";

> caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income and Extra Expense Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.
>
> ***
>
> **2.      Extra Expense**
>
> Extra Expense means reasonable and necessary expenses described in **a.**, **b.** and **c.** below that you incur during the "period of restoration" and that you would not have incurred if there had been no <u>direct physical loss of or damage to property</u> caused by or resulting from a <u>Covered Cause of Loss</u>.

(Ex. A, p. 58 of 159 (underscores added)).  The term "Covered Cause of Loss" is defined in the same form to mean "RISKS OF DIRECT PHYSICAL LOSS unless the loss is excluded or limited in: **a.** Section **C.** Exclusions…of the Deluxe Property Coverage Form…." (*Id.*, p. 59 of 159).

To state a plausible entitlement to coverage under these provisions at the pleading stage, the Plaintiff was required to plead facts showing that, (1) it experienced a necessary "suspension" of its "operations;" (2) the suspension was caused by direct physical loss of or damage to property at the premises described in the Policy; and (3) the loss of or damage to property was caused by a Covered Cause of Loss, *i.e.,* a risk of direct physical loss that is not excluded. The Complaint alleges none of these requirements.

> **1.      The Complaint Fails to Allege Any Direct Physical Loss Of Or Damage To Property At The Premises, Or A "Suspension" of "Operations" Caused by Such Damage.**

As noted above, allegations of "direct physical loss of or damage to property" at insured premises caused by a Covered Cause of Loss are essential to a state claim under the Business Income and Extra Expense coverages. In this context, "direct physical loss of or damage to property" occurs when the property experiences a tangible and material alteration of its condition,

or when the insured is permanently and physically dispossessed of it (such as by theft). *See Port Authority of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226 (3d Cir. 2002) (observing that "[i]n ordinary parlance and widely accepted definition, physical damage to property means 'a distinct, demonstrable, and physical alteration' of its structure," and can also include an invisible physical condition (like airborne asbestos fibers) that manifests itself and renders the property dangerous to occupy); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of America*, 2020 WL 5525171, at *4 (N.D. Cal. Sept. 15, 2020) (permanent, physical dispossession of property is a "physical loss"). This definition is consistent with precedent from other jurisdictions,[5] as well as a leading insurance treatise, which states:

> The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude losses that are intangible or incorporeal, and, thereby to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.

10A *Couch On Insurance* § 148.46. (3d ed. 2019).

Here, Plaintiff does not allege that <u>anything</u> happened to any property at any of its warehouse or showroom locations. For example, there is no allegation that any Business Personal Property was stolen, or that any the condition of any building or Business Personal Property was physically and materially altered in some way by fire, water, smoke, or some other external force. While the Complaint seeks coverage for financial losses resulting from Coronavirus, <u>it does not allege that Coronavirus was physically present in any of its showrooms or warehouses</u>. In fact,

---

[5] *See, e.g., Mama Jo's, Inc. v. Sparta Ins. Co.,* No. 18-12887, 2020 WL 4782369, at *8 (11th Cir. Aug. 18, 2020) (affirming entry of summary judgment for insurer and agreeing that mere presence of construction dust inside insured premises did not constitute "physical damage" because "an item or structure that merely needs to be cleaned has not suffered a "loss" which is both "direct" and "physical."); *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 270-71 (5th Cir. 1990) (observing that "[t]he language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state – for example, the car was undamaged before the collision dented the bumper.").

Plaintiff assures the Court that it is "not seeking a determination of whether the Coronavirus was present in its business" (Compl., ¶ 32), and alleges that it has no knowledge of any employee or customer being afflicted by COVID-19. (*Id., ¶* 24). Charter Oak disputes that the mere presence of Coronavirus on surfaces constitutes physical loss of or damage to property, but the Court need not address that question in ruling on this Motion because Plaintiff expressly disavows that virus was present in its premises.

Moreover, while the Complaint alleges that Orders issued to combat the spread of COVID-19 prevented Plaintiff from using its furniture showrooms (*Id.*, ¶ 21), a mere loss of use of property does not constitute a "physical loss" of property for purposes of Business Income and Extra Expense coverage. That holding resonates in decisions throughout the country. *See, e.g.*, *Pentair, Inc. v. American Guar. and Liab. Ins. Co.*, 400 F.3d 613, 617 (8th Cir. 2005) (Minnesota law) (rejecting argument that "mere loss of use or function of property constitutes 'direct physical loss or damage'" without demonstrable physical damage); *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) ("The words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure."); *Harry's Cadillac-Pontiac-GMC Truck Co.*, 486 S.E.2d 249, 251 (N.C. App. 1997) (finding no "physical loss" sufficient to trigger business interruption coverage where customers could not access car dealership due to heavy snowstorm).

Recently, a number of courts have addressed the question of whether government orders closing non-essential businesses or otherwise regulating the use or occupancy of insured premises during the COVID-19 pandemic cause *physical* loss of or damage to property. In each and every

case, the court held that they do not. The district court's recent discussion of this issue in *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20 CV 2160, 2020 WL 5630465, at *2 (N.D. Ill. Sept. 21, 2020) is typical of the reasoning embraced by courts:

> The critical policy language here—"direct physical loss"—unambiguously requires some form of actual, physical damage to the insured premises to trigger coverage. The words "direct" and "physical," which modify the word "loss," ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure…Plaintiff simply cannot show any such loss as a result of either inability to access its own office or the presence of virus on its physical surfaces, the latter of which plaintiff fails to allege in its complaint. . . Nothing about the property has been altered since March 2020.

*See also Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, No. 4-20-cv-222-CRW-SBJ (S.D. Iowa Sept. 29, 2020) (noting that "virus-related closure of business do not amount to direct loss to property covered by the. . .policy of insurance."); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of America*, No. 20-cv-03213-JST, 2020 WL 5525171 (N.D. Cal. Sept. 14, 2020) (dismissing complaint of insured-retailer because its "inability to occupy its storefront does not fall within the Business Income and Extra Expense coverage of this policy."); *Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*, No. 20-cv-907-CAB-BLM, 2020 WL 5500221 (S.D. Cal. Sept. 11, 2020) (where complaint merely alleged a "loss of the ability to continue operating [a] business as a result of the government orders," it did not plead the "physical loss" required to trigger Business Income coverage); *10E, LLC v. Travelers Indem. Co. of Conn.,* No. 2:20-CV-04418-SVW-AS, 2020 WL 5359653 (C.D. Cal. Sept. 2, 2020) (dismissing complaint and emphasizing that "Plaintiff only plausibly alleges that in-person dining restrictions interfered with the use or value of its property— not that the restrictions caused direct physical loss or damage," and noted that "[a]n insured cannot recover by attempting to artfully plead temporary impairment to economically valuable use of property as physical loss or damage."); *Rose's 1 LLC, et al. v. Erie Insurance Exchange*, No. 2020

CA 002424 B, 2020 WL 4589206, at *2 (D.C. Super. Ct. Aug. 6, 2020) (government restriction of on-premises dining "did not effect any direct changes to the properties," and "did not have any effect on the material or tangible structure of the insured properties"); *Malaube, LLC, v. Greenwich Ins. Co.*, No. 20-22615-CIV, 2020 WL 5051581, at *7-8 (S.D. Fla. Aug. 26, 2020) (recommending dismissal of restaurant's complaint and ruling that insured restaurant "has not alleged any physical harm," due to government restriction of on-premises dining, and that "the restaurant merely suffered economic losses – not anything tangible, actual, or physical"); *Diesel Barbershop, LLC v. State Farm Lloyd's,* No. 5:20-CV-461-DAE, 2020 WL 4724305, at *5 (W.D. Tex. Aug. 13, 2020) (rejecting insured's argument that "loss of use of the Properties due to the Orders restricting usage of the Properties" is "physical loss").

The Third Circuit has addressed the meaning of "direct physical loss" in two cases where it was alleged that an insured could not occupy or use its premises for its intended purpose. Its decisions stand for the proposition that the uninhabitability of property can constitute a "physical loss" if it is caused by a dangerous physical condition that manifests within the premises— something that is not alleged in this case. In *Port Authority of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, the Court observed that a release of asbestos fibers from building materials would constitute "physical loss" if it contaminated the property to the point where "its function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable, or if there exists an imminent threat of the release of a quantity of asbestos fibers that would cause such loss of utility." *Id.* at 235. The Court ultimately affirmed the entry of summary judgment for the insurer because there was no evidence that asbestos fibers actually had been released into the buildings' indoor environment. *Id.* at 236. Shortly after issuing its decision in *Port Authority*, the Court applied the same test to resolve a coverage dispute arising from

13

bacterial contamination of property in Pennsylvania. *Motorists Mutual Ins. Co. v. Hardinger,* 131 F. App'x 823 (3rd Cir. 2005). In *Motorists Mutual,* an artesian well attached to the insured's home was contaminated with dangerous E.coli bacteria, rendering the home unfit for occupancy. In an unpublished decision, the Court applied the test for "direct physical loss or damage" articulated in *Port Authority* and remanded the case so a jury could decide "whether the functionality of the [insured's] property was nearly eliminated or destroyed, or whether their property was made useless or uninhabitable" by the presence of harmful E-coli bacteria in it. *Id.*, 826-27.[6]

*Port Authority* and *Motorists Mutual* are readily distinguishable from the case at bar. Here, Plaintiff does not allege that any dangerous condition manifested inside any insured location that rendered its property unfit for use or occupancy. Indeed, nothing has happened to any of Plaintiff's property. Rather, it alleges that a government order—something intangible and extraneous to the insured premises—temporarily prevented Plaintiff from using the property. That use will be restored when the government restrictions are lifted (assuming they have not been removed already). A mere detrimental economic impact caused by a temporary impairment of the use of insured property by government orders does not trigger coverage. *See Infinity Exhibits, Inc. v. Certain Underwriters At Lloyds London*, No. 8:20-cv-1605-T-30AEP (M.D. Fla. Sept. 28, 2020) (dismissing insured's claim for business income loss and holding that mere "economic damage" is not synonymous with "physical loss"); *Mudpie*, 2020 WL 5525171, at *4 ("Although [the

---

[6] Charter Oak does not concede that the unpublished opinion in *Motorists Mutual* correctly sets forth the law of Pennsylvania on the meaning of "direct physical loss of or damage to property," and maintains that Pennsylvania would likely follow the majority rule nationwide, under which "[t]hat the loss needs to be 'physical,' given the ordinary meaning of the term, is '*widely held to exclude alleged losses that are intangible or incorporeal*, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a *detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property*.'" *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (Cal. Ct. App. 2010) (quoting 10A COUCH ON INSURANCE § 148:46, pp. 148-81) (emphasis added).

insured] has been dispossessed of its storefront, it will not be a "permanent dispossession"….
When the Stay at Home orders are lifted, [insured] can regain possession of its storefront.").

Furthermore, if the Court were to adopt Plaintiff's theory that the impairment of its use of the Premises due to government Orders triggers Business Income and Extra Expense coverage, it would depart from the basic principle of Pennsylvania insurance law that "an insurance policy, like every other written contract, must be read in its entirety and the intent of the policy is gathered from consideration of the entire instrument." *Riccio v. Am. Republic Ins. Co.*, 705 A.2d 422, 426 (Pa. 1997). *First*, when the Policy covers a Business Income or Extra Expense loss, the time period that applies to such coverage is the "period of restoration" (Ex. A, p. 58 of 159), which generally ends on "[t]he date when the property at the described premises *should be repaired, rebuilt or replaced* with reasonable speed and similar quality" (*Id.*, p. 69 of 159 (emphasis added)). Courts have repeatedly recognized that this definition contemplates a *physical* change to insured property that is capable of being remedied through repair or replacement. *See, e.g. Newman Myers*, 17 F. Supp. 3d at 332 ("The words 'repair' and 'replace' [in the policy's definition of 'period of restoration'] contemplate physical damage to the insured premises as opposed to loss of use of it."); *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005) ("'Rebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature."); *Harry's Cadillac*, 486 S.E.2d at 251 ("The business interruption clause does not cover all business interruption losses, but only those losses requiring repair, rebuilding or replacement."); *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 7-8 (N.Y. App. Div. 2002) (similar). Here, Plaintiff does not allege any loss of or damage to property at the Premises that can be repaired or replaced.

*Second*, the Policy is quite clear in providing that a bare "loss of use" of insured property is not among the risks insured by Charter Oak. The Policy contains an exclusion entitled "Consequential Loss" which provides that "[w]e will not pay for loss or damage caused by or resulting from . . . loss of use…." (Ex. A, p. 42 of 159). This exclusion has been deemed to apply in the exact circumstances presented here. *See Mudpie,* 2020 WL 5525171, at *6 ("The separate provision for loss of use suggests that the "direct physical loss of ... property" clause was not intended to encompass a loss where the property was rendered unusable without an intervening physical force. The provision also undermines Mudpie's claim that "a reasonable purchaser of insurance would read the policy as providing coverage for a loss of functionality."). Construing the phrase "direct physical loss of or damage to property" to encompass a loss of use unaccompanied by a physical alteration of insured property would nullify the "loss of use" exclusion altogether. *See Toffler Assocs., Inc. v. Hartford Fire Ins. Co.*, 651 F. Supp. 2d 332, 344 n.3 (E.D. Pa. 2009) ("The Court must avoid interpreting the Policy in a way that makes any term meaningless or superfluous.").

Because Plaintiff has not pled, and cannot allege, any direct physical loss of or damage to property at the insured premises, it has not satisfied a second essential element of Business Income and Extra Expense coverage—a necessary suspension of its operations caused by such direct physical loss or damage. (Ex. A, p. 58 of 159). The Policy defines the term "suspension" as "[t]he partial or complete cessation of your business activities," and the word "operations" as "your business activities occurring at the described premises. . . ." (*Id.*, pp. 69-70 of 159). Here, the Complaint alleges that "[o]nce the Orders were promulgated, [Plaintiff] was forced to close its showrooms to the public" and was unable to deliver and install furniture that was already ordered by customers. (Compl., ¶¶ 22-23). It is further alleged that "[t]he diminishment of [Plaintiff's]

business is the result of the Orders." (*Id.*, ¶ 24). If taken as true for purposes of this Motion, these allegations firmly establish that any partial cessation of Plaintiff's business activities was caused not by physical loss of or damage to property at an insured location, but from factors "exogenous to the premises themselves." *See Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014). For this additional reason, Plaintiff has failed to plead entitlement to Business Income or Extra Expense coverage.

### 2.     The Policy Excludes All Causes of Loss Alleged By Plaintiff

Plaintiff has no right to Business Income or Extra Expense coverage due to its failure and inability to allege that its operations were necessarily suspended by direct physical loss of or damage to its property. However, even where an insured successfully pleads and establishes those elements, these coverages do not apply unless the physical loss of or damage to property and resulting suspension were caused by a Covered Cause of Loss. As explained above, the Complaint in this case alleges that Plaintiff's business activities were interrupted by government Orders issued in response to Coronavirus and COVID-19. (Compl., ¶¶ 21-23). Both of those causes are excluded causes of loss, not Covered Causes of Loss.

### (a)     The Virus Exclusion Applies As A Matter Of Law

The Policy includes the following exclusion:

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage. Exclusions **C.1.a** through **C.1.l.** apply whether or not the loss event results in widespread damage or affects a substantial area:

* * *

**j.     Virus or Bacteria**

   **(1)**     Any virus, bacterium, or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(Ex. A, p. 39 of 159). This exclusion is incorporated into the Deluxe Business Income (And Extra Expense) Coverage Form, which is the form that provides Business Income, Extra Expense and Civil Authority coverage. (*Id.*, p. 59 of 159, ¶ 3 ("Covered Causes of Loss")).

The Complaint repeatedly alleges a causal nexus between Coronavirus and the interruption of Plaintiff's business. (Compl., ¶ 11 (alleging that Governor Wolf issued initial Proclamation of Disaster Emergency "in response to the 2019 novel Coronavirus disease (COVID-19)…."); ¶ 12 (alleging that Governor Wolf of Pennsylvania "was imposing mitigation efforts to curtail the spread of COVID-19."). If taken as true for purposes of this Motion, these allegations establish that any suspension of Plaintiff's operations and resulting expenses or income loss were caused directly or indirectly by Coronavirus—a virus "that induces or is capable of inducing physical distress, illness or disease."

A number of courts recently have applied similarly-worded virus exclusions to bar coverage for business income loss and extra expenses where, as in this case, the insured attributed the interruption of its business to government orders intended to curb the spread of the virus. *See Franklin EWC v. The Hartford Financial Services*, No. 20-cv-04434 JSC, 2020 WL 5642483 (N.D. Cal. Sept. 22, 2020) (finding that "unambiguous language" of virus exclusion applies to complaint that "repeatedly alleges that the virus caused and continues to cause the risk of direct physical loss…."); *Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*, 2020 WL 5240218, at *2 (M.D. Fla. Sept. 2, 2020) (holding that "plain language" of a similar virus exclusion precluded coverage for business income losses that insured attributed to government orders issued to combat Coronavirus); *Diesel Barbershop, LLC, et al. v. State Farm Lloyds,* Case No. 5:20-cv-00461-DAE, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020) (dismissing insured's complaint and holding that virus exclusion unambiguously barred coverage for business income losses of barber

shops that resulting from government closure orders prompted by Coronavirus); *Gavrilides Management Co. v. Michigan Ins. Co.*, Case No. 20-258-CB, Mich. Cir. Ct. for Ingham County, Tr. of July 1, 2020 Hearing, p. 21) (Ex. G hereto) (observing that the virus exclusion "supplies a completely workable, understandable, usable definition of the word virus," and "the plaintiff has not supported that [the virus exclusion] doesn't apply . . . ."). Here, as in the foregoing cases, the allegations of the Complaint leave no doubt that Plaintiff's alleged business interruption and resulting financial losses were caused directly or indirectly by a virus that causes illness and disease.

Notwithstanding the factual allegations directly tying Plaintiff's alleged losses to Coronavirus, the Complaint draws the bare legal conclusion that "the virus exclusion does not apply to the losses asserted by Plaintiff." (Compl., ¶ 31(g)). Putting aside that conclusions of law are entitled to no deference at the pleading stage, *Brightwell v. Lehman*, 2006 WL 931702, at *3, Plaintiff's allegation ignores the plain language of the Policy. The virus exclusion expressly applies to all <u>loss</u> and all <u>damage</u> that is caused directly or indirectly by a disease-causing virus. (Ex. A, p. 39 of 159).

Furthermore, Plaintiff cannot circumvent the virus exclusion by alleging that the Orders— not Coronavirus—caused its losses. The Complaint concedes, as it must, that the Orders are inextricably intertwined with Coronavirus. (Compl., ¶¶ 11-12). The Orders also confirm their close connection to Coronavirus. (*See, e.g.*, Ex. B (Gov. Wolf Proclamation of 3/6/20 explaining "it is critical to prepare for and respond to suspected or confirmed cases [of COVID-19] in the Commonwealth and to implement measures to mitigate the spread of COVID-19")); Ex. E (Mayor Kenney 3/22/20 Order No. 2 explaining that, "in order to limit the spread of COVID-19, it is immediately necessary to forbit the operation of businesses that do not provide essential services

to the public and activities that endanger public health")); Ex. F (Mayor Bowser Order of 3/24/20 stating that "[t]his Order is issued based on the increasing number of confirmed cases of COVID-19 within Washington, DC" and describing public health practices to reduce community transmission of COVID-19).

Plaintiff's attempt to divorce the Orders from Coronavirus defies common sense and is inconsistent with the unambiguous language of the virus exclusion. Indeed, a similar argument was recently rejected by the district court in *Diesel Barbershop, LLC, supra*:

> Plaintiffs have pleaded that COVID-19 is in fact the reason for the [government] Orders being issued and the underlying cause of Plaintiffs' alleged losses. While the Orders technically forced the Properties to close to protect public health, *the Orders only came about sequentially as a result of the COVID-19 virus spreading rapidly throughout the community.* Thus, it was the presence of COVID-19 in Bexar County and in Texas that was the primary root cause of Plaintiffs' businesses temporarily closing.

*Id.* at *6 (emphasis added).

Finally, the virus exclusion applies to any loss caused "directly or indirectly" by virus, and "regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage." (Ex. A, p. 39 of 159). *See T.H.E. Ins. Co. v. Charles Boyer Children's Tr.*, 455 F. Supp. 2d 284, 291 (M.D. Pa. 2006), *aff'd*, 269 F. App'x 220 (3d Cir. 2008) (holding that this clause "precludes coverage of a loss so long as a specifically enumerated exclusion contributed in some way to the loss"); *Gillin v. Universal Underwriters Ins. Co.*, No. CIV.A. 09-5855, 2011 WL 780744, at *7 (E.D. Pa. Mar. 4, 2011) (same result); *Steding v. Mut. Benefit Ins. Co.*, No. 1441 WDA 2016, 2017 WL 1828307, at *5 (Pa. Super. Ct. May 4, 2017) (non-precedential) (enforcing and applying same clause in water damage exclusion). Thus, even assuming the Orders could be deemed a covered peril distinct from the virus that prompted their issuance (they cannot), the lead-in language of the virus exclusion must be enforced to bar coverage for the loss.

20

**(b)      The "Acts or Decisions" and "Ordinance or Law" Exclusions Also Preclude Coverage**

Even assuming, for purposes of argument, that the Orders logically could be deemed a cause of loss independent from virus (they cannot), attributing the interruption of Plaintiff's business to the Orders would not spare the Complaint from dismissal because the Orders are also excluded causes of loss. The Policy's Acts or Decisions exclusion bars coverage for "loss or damage caused by or resulting from . . . [a]cts or decisions, including the failure to act or decide, of any person, group, organization or governmental body." (Ex. A, p. 109 of 159) (emphasis added)). Courts have held that similarly-worded Acts or Decisions exclusions are unambiguous and bar coverage for loss or damage caused by governmental orders and actions. *See Jernigan v. Nationwide Mut. Ins. Co*., 2006 WL 463521, at *10-11 (N.D. Cal. Feb. 27, 2006) (Acts or Decisions exclusion applied to loss caused by, among other acts or decisions, town's "stop-work order"); *Cytopath Biopsy Lab., Inc. v. U.S. Fid. & Guar. Co.*, 774 N.Y.S.2d 710, 711 (N.Y. App. Div. 2004) (Acts or Decisions exclusion barred coverage where "the real losses claimed herein resulted from refusal by the authorities to permit resumption of operations").[7] Plaintiff claims that the COVID-19 Orders forced Plaintiff to close its showrooms to the public, causing it to endure a loss of business income and extra expenses. (Compl., ¶¶ 21-23). It is undeniable that the Orders are "acts…of [a] governmental body." The Acts or Decisions exclusion applies as a matter of law.

The facts alleged in the Complaint also support application of the Ordinance or Law exclusion, which provides that Charter Oak "will not pay for loss or damage caused directly or

---

[7] The Acts or Decisions and Ordinance or Law exclusions exclude direct physical loss of or damage to property caused by the action of a governmental authority. They do not conflict with the Policy's Civil Authority coverage, which extends Business Income and Extra Expense coverage to a situation where government orders prohibit access to insured premises in response to physical damage to property at locations *other than* the insured premises caused by a Covered Cause of Loss. As explained below, Plaintiff has not alleged and cannot plead the prerequisites for Civil Authority coverage.

indirectly by . . . [t]he enforcement of or compliance with any ordinance or law . . . [r]egulating the. . .use. . .of any property." (Ex. A, p. 39 of 159) (emphasis added)). Such loss is excluded "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *Id.* This exclusion "clearly and unambiguously excludes coverage . . . for losses, including business income losses, caused by the enforcement of the law." *Ira Stier, DDS, P.C. v. Merchants Ins. Grp.*, 127 A.D.3d 922, 924 (N.Y. App. Div. 2015) (holding that, where dental practice could not operate due to ordinance requiring certificate of occupancy, Ordinance or Law exclusion precluded coverage for plaintiff's business income losses). "Ordinances and laws are characterized by their being created and enforced by a governmental authority. For example, Webster's Third defines an 'ordinance' as 'an authoritative decree or direction' or 'a public enactment, or law promulgated by governmental authority. . . .'" *Wright v. State Farm Fire & Cas. Co*., 555 F. App'x 575, 578 (6th Cir. 2014) (citing WEBSTER'S THIRD NEW INT'L DICT. 1588 (3d ed. 1961)) (holding a restrictive covenant is not an ordinance). The Ordinance or Law exclusion applies here as a matter of law because Plaintiff attributes the interruption of its business to Orders directing Plaintiff to cease operations at its showrooms in Philadelphia and the District of Columbia. A government directive that prohibits a business from conducting activities at its insured premises undeniably qualifies as an "ordinance" that "regulates" the "use" of the property.

In summary, the facts alleged in the Complaint establish that Plaintiff is not entitled to coverage under the Policy's Business Income or Extra Expense provisions. Not only does Plaintiff fail to plead the essential requirements of those coverages, it also alleges that its business was interrupted by Coronavirus and the Orders, risks that are expressly excluded by the Policy. Because the Complaint does not plead a right to coverage, Plaintiff is not entitled to a declaratory judgment, nor does it state a cause of action for breach of contract that is plausible on its face.

**B.** **Plaintiff Is Not Entitled to Civil Authority Coverage As A Matter of Law**

Just as the Complaint fails to allege facts sufficient to state a plausible entitlement to Business Income and Extra Expense coverage, it does not plead the requisite elements of Civil Authority coverage.  The Policy grants Civil Authority on the following terms:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and the actual Extra Expense you incur caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> **(a)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than 100 miles from the damaged property; and
>
> **(b)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Ex. A, pp. 59-60 of 159 (emphasis added)).  Where all of these requirements of coverage are satisfied, Civil Authority coverage begins 72 hours after the action of civil authority, and extends for a period of 30 consecutive days. (*Id.*, pp. 17, 60 of 159).

The Complaint is deficient in its failure to plead all elements of Civil Authority coverage. Specifically, the Complaint does not identify any "damage to property other than property at the described premises" that was caused by a Covered Cause of Loss. Because the Complaint fails to describe any "damaged property" away from insured premises, it is not surprising that Plaintiff also fails to allege that a civil authority prohibited access to an area "immediately surrounding the damaged property" as a result of the damage. Plaintiff's allegation that the Orders caused "the diminishment of [Plaintiff's] business" satisfies neither of these requirements. (Compl., ¶ 24).

23

The Complaint also does not plead facts suggesting that government officials in Pennsylvania or the District of Columbia issued the Orders in response to dangerous physical conditions resulting from the "damaged property" or the continuation of a Covered Cause of Loss that caused the damage, or to allow civil authorities unimpeded access to the unidentified "damaged property." Courts have consistently held that similar policy provisions require "a *causal link* between *prior* damage and civil authority action." *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 687 (5th Cir. 2011) (emphasis added); *Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v. Chubb Corp.*, 2010 WL 4026375, at *3 (E.D. La. Oct. 12, 2010) ("The direct nexus between the damage sustained and the order that the policy requires suggests that the Policy was designed to address the situation where damage occurs and the civil authority subsequently prohibits access.").

Here, that causal link is missing. Plaintiff correctly alleges that the Orders were issued "in response to the 2019 novel coronavirus disease (COVID-19)," and as "mitigation efforts to curtail the spread of COVID-19." (Compl., ¶¶ 11-12) (emphasis added). The Complaint does not allege that any of the Orders was issued in response to or as a result of existing "damage to property other than property at the described premises." Moreover, the text of the Orders confirms that they were issued to prevent the future spread of a deadly virus. *See* (Ex. C, Mayor Kenney's 3-17-2020 Order ("[T]he Mayor . . . [has] determined that, in order to limit the spread of COVID-19, it is immediately necessary to forbid the operation of businesses that do not provide essential services to the public . . . .")); (Ex. F, Mayor Bowser's 3-24-2020 Order ("The intent of this Order is to: . . . c. Significantly slow the spread of COVID-19; d. Reduce COVID-19 virus infections, COVID-19 illness, and death caused by COVID-19 and its complications . . . .").

### 2. Civil Authority Coverage Does Not Apply To Losses Caused By Or Resulting From A Virus

Plaintiff's failure to allege that essential elements of Civil Authority coverage means, as a matter of law, that Plaintiff is not entitled to the 30 days of business income coverage granted by that provision. But even if the Complaint could be construed to allege that Coronavirus "damaged" specific property in the vicinity of the Premises (Charter Oak denies that is a possibility), the Policy still would not cover Plaintiff's alleged losses. The Policy's Civil Authority coverage applies only where, among other requirements, the physical loss of or damage to property away from insured premises is "caused by or result[s] from a Covered Cause of Loss." (Ex. A, pp. 59-60 of 159). As noted above, the Policy's virus exclusion states that Charter Oak "will not pay for loss or damage caused directly or indirectly by. . .[a]ny virus. . .that induces or is capable of inducing physical distress, illness or disease." (*Id.*, pp. 37, 39 of 159). The exclusion expressly applies to Civil Authority coverage and all other coverages granted by the Deluxe Business Income (And Extra Expense) Coverage Form, and applies "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." (Ex. A, p. 39 of 159). Because Coronavirus is a virus that "induces or is capable of inducing physical distress, illness or disease," it is <u>not</u> a Covered Cause of Loss, so its presence in a building within 100 miles of Plaintiff's insured locations does not trigger Civil Authority coverage as a matter of law. For this additional reason, Plaintiff fails to state a plausible entitlement to civil authority coverage.

## V. CONCLUSION

For all the reasons stated above, the Complaint fails to state a claim against Charter Oak upon which relief can be granted. Thus, Charter Oak respectfully requests that the Court dismiss the Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6).

**BUTLER WEIHMULLER KATZ CRAIG LLP**

*/s/ Richard D. Gable, Jr.*

RICHARD D. GABLE, JR., ESQ.
rgable@butler.legal
1818 Market Street, Suite 2740
Philadelphia, PA  19103
Telephone: (215) 405-9191
Facsimile:  (215) 405-9190


**ROBINSON & COLE LLP**

Gregory P. Varga
*(Pro Hac Vice Application Forthcoming)*
280 Trumbull Street
Hartford, CT 06103
Telephone: (860) 275-8230
Facsimile: (860) 275-8299
gvarga@rc.com


*Attorneys for Defendant, The Charter Oak Fire
Insurance Company*

Dated:  October 2, 2020

## **CERTIFICATE OF SERVICE**

I, Richard Gable, certify that on October 2, 2020, I caused a true and correct copy of the

foregoing to be served via ECF upon the following counsel of record:

Aaron L. Peskin, Esq.
aaron@ferraralawgp.com
FERRARA LAW GROUP, P.C.
50 W. State Street, Suite 1100
Trenton, NJ  08608

*Attorneys for Plaintiff*

*/s/ Richard D. Gable, Jr.*
RICHARD D. GABLE, JR., ESQ.