IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMERCIAL OFFICE FURNITURE COMPANY, INC. t/a COFCO OFFICE FURNISHINGS, INC. | : : : : | CIVIL ACTION |
| v. | : : | |
| THE CHARTER OAK FIRE INSURANCE COMPANY | : : | NO. 20-4713 |

**MEMORANDUM**

Padova, J.                                                                                                                                                       May 6, 2021

Plaintiff, Commercial Officer Furniture Company, Inc., filed this breach of contract and declaratory judgment action against The Charter Oak Fire Insurance Company ("Charter Oak") in the Court of Common Pleas of Philadelphia County. Plaintiff seeks payment under a policy of insurance issued to it by Charter Oak for losses it has suffered as a result of orders issued by Pennsylvania Governor Tom Wolf, Philadelphia Mayor Jim Kenney, and District of Columbia Mayor Muriel Bowser, which required non-essential businesses to close their physical locations in response to the COVID-19 pandemic. Charter Oak removed the action to this Court on the ground that we have diversity jurisdiction. Plaintiff has moved to remand the action to the Court of Common Pleas, asserting that it involves only an unsettled issue of Pennsylvania state insurance law that the courts of Pennsylvania should decide in the first instance. For the reasons that follow, we grant the Motion.

**I.    FACTUAL BACKGROUND**

The Complaint alleges the following facts. Charter Oak issued Plaintiff a policy of insurance for the period from June 29, 2019 to June 29, 2020 (the "Policy"). (Compl. ¶ 6.) The Policy is an "all risk" policy that includes coverage for commercial property, including Plaintiff's

building and personal property. (Id. ¶¶ 8, 10.) The Policy provides business income, extra expense, and civil authority coverages. (Id. ¶ 9.)

On March 6, 2020, while the Policy was in effect, Governor Wolf issued a Proclamation of Disaster Emergency in response to the COVID-19 pandemic. (Id. ¶ 11.) On March 16, 2020, Governor Wolf announced that, in order to curtail the spread of COVID-19 throughout the Commonwealth, nonessential businesses would be required to close beginning at midnight on March 17, 2020. (Id. ¶ 12.) On the same day, Mayor Kenney ordered all nonessential businesses in the City of Philadelphia to shut down by 5:00 p.m. on March 16, 2020. (Id. ¶ 13.) On March 17, 2020, Mayor Kenney, along with the Philadelphia Commissioner of Health, issued an Emergency Order prohibiting the operation of non-essential businesses. (Id. ¶ 14.) On March 19, 2020, Governor Wolf announced that all non-life-sustaining businesses in the Commonwealth of Pennsylvania were required to close their physical locations as of 8:00 p.m. that day. (Id. ¶ 16.) Plaintiff's business, an office furniture company, is not considered to be life sustaining. (Id. ¶¶ 16, 20.) On March 22, 2020, Mayor Kenney issued an Emergency Order prohibiting the operation of non-essential businesses and activities in Philadelphia. (Id. ¶ 17.) On March 24, 2020, Mayor Bowser ordered all non-essential businesses to close in the District of Columbia. (Id. ¶ 18.) These proclamations, announcements and orders are referred to collectively herein as the COVID-19 Orders.

Plaintiff is based in Philadelphia and has a showroom and warehouse in the District of Columbia. (Id. ¶ 20.) Plaintiff was forced to close its showrooms as a result of the COVID-19 Orders and can only sell its products and services online or by phone. (Id. ¶ 21.) Plaintiff has lost half of its business and most of its income as a result of the COVID-19 Orders and has had to lay off staff. (Id. ¶ 22.) It has also been unable to deliver and install furniture that had been ordered,

but not yet paid for, prior to the issuance of the COVID-19 Orders. (Id. ¶ 23.) As a result, Plaintiff has been unable to realize the revenue from those orders and has been forced to store the ordered furniture in its warehouses, increasing its expenses. (Id.) Plaintiff has suffered significant business losses and extra expenses as a result of the COVID-19 Orders and coverage under the Policy is vital to its ability to continue as a business. (Id. ¶ 28.) Charter Oak has denied coverage for Plaintiff's losses arising from the COVID-19 Orders. (Id. ¶ 29.)

The Complaint asserts two claims against Charter Oak. Count I asserts a declaratory judgment claim and asks this Court to determine Plaintiff's rights under the Policy, declare that its losses are covered under the Policy, declare that Charter Oak is obligated to provide coverage to it under the business interruption, extra expense, and civil authority provisions of the Policy, and declare that the virus exclusion in the Policy does not apply to Plaintiff's losses. (Id. ¶¶ 27, 31.) Count II asserts a breach of contract claim arising from Charter Oak's denial of coverage for which Plaintiff seeks monetary damages.

## II.     LEGAL STANDARD

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district . . . embracing the place where such action is pending." 28 U.S.C. § 1441(a). The district courts have original jurisdiction over cases involving a federal question or diverse parties. 28 U.S.C. §§ 1331, 1332. We have federal question jurisdiction where the claims arise under the Constitution, laws, or treaties of the United States. Id. § 1331. We have diversity jurisdiction over civil actions where "the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1)).

Under the Declaratory Judgment Act ("DJA"), "courts '*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" Reifer v. Westport Ins. Corp., 751 F.3d 129, 134 (3d Cir. 2014) (quoting 28 U.S.C. § 2201(a)). The DJA "confers discretionary, rather than compulsory, jurisdiction upon federal courts." Id. (citing Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494 (1942)). "This is an exception to the general rule that 'federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.'" Id. (quoting Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996)). Thus, "[c]onsistent with the nonobligatory nature of the [DJA], a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995) (footnote omitted). Our jurisdiction over a claim for a declaratory judgment is discretionary even if the declaratory judgment claim originated under state law rather than under the DJA. See Reifer, 751 F.3d at 134 n.4.

### III. **DISCUSSION**

Plaintiff asks us to remand this action to state court because it seeks declaratory relief and depends on unsettled and novel issues of state law which should be decided in the first instance by the state courts. Charter Oak, however, maintains that we lack the discretion to remand this action because Count II of the Complaint alleges a separate and independent claim for breach of contract. In Rarick v. Federated Service Insurance Company, 852 F.3d 223 (3d Cir. 2017), the United States Court of Appeals for the Third Circuit explained that "[a] federal district court's discretion to decline jurisdiction depends on whether the complaint seeks legal or declaratory relief. When an

4

action seeks legal relief, federal courts have a 'virtually unflagging obligation' to exercise jurisdiction." Id. at 227 (quoting Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976). "There are . . . a few 'extraordinary and narrow exception[s]' to this rule." Id. (second alteration in original) (quoting Colo River, 424 U.S. at 813). The Third Circuit held in Rarick that "[w]hen a complaint contains claims for both legal and declaratory relief, a district court must determine whether the legal claims are independent of the declaratory claims. If the legal claims are independent, the court has a 'virtually unflagging obligation' to hear those claims, subject of course to Colorado River's exceptional circumstances." Id. at 229 (citing Colo. River, 424 U.S. at 817-19).

Using the Rarick test, we first determine whether Plaintiff's breach of contract claim is independent of its claim for declaratory judgment. "'Non-declaratory claims are "independent" of a declaratory claim when they are alone sufficient to invoke the court's subject matter jurisdiction and can be adjudicated without the requested declaratory relief.'" Id. at 228 (quoting R.R. Street & Co., Inc. v. Vulcan Materials Co., 569 F.3d 711, 715 (7th Cir. 2009)). If a plaintiff's legal claims are independent of its declaratory claim, "the court must adjudicate the legal claims unless there are exceptional circumstances as described in Colorado River," and "courts generally will not decline the declaratory judgment action in order to avoid piecemeal litigation." Id. at 228 (alteration in original) (citing R.R. Street, 569 F.3d at 715-16). On the other hand, "'[w]here the [legal] claims are not independent, the district court has discretion . . . to abstain from hearing the entire action.'" Id. (second alteration in original) (quoting R.R. Street, 569 F.3d at 716).

Count II of the Complaint alleges that Charter Oak breached its obligations under the Policy by denying coverage for the losses that Plaintiff suffered as a result of the COVID-19 Orders. (Compl. ¶ 35.) Count II also alleges that Plaintiff has suffered damages as a result of

5

Charter Oak's breach of its obligations under the Policy. (Id. ¶ 36.) While the Complaint does not specify the extent of Plaintiff's damages, it alleges that Plaintiff has suffered significant business losses and extra expenses as a result of the COVID-19 Orders and seeks payment of its damages under the Policy's business income and extra expense coverages. (Id. ¶¶ 9, 28, 31.) The Policy provides for business income and extra expense coverage of up to $1,000,000. (Policy, Docket No. 1-2 at 18 of 160.) We find, accordingly, that the Complaint appears to seek damages exceeding $75,000.00. The Complaint also alleges that Plaintiff is a Pennsylvania corporation, which has its principal place of business in Philadelphia, and that Charter Oak is a Delaware corporation with its principal place of business in Connecticut. (Compl. ¶¶ 1-2.) We conclude that Plaintiff's breach of contract claim is sufficient to invoke our diversity jurisdiction pursuant to 28 U.S.C. § 1332 and, having applied the "independent claim test" to the Complaint, we further conclude that Plaintiff's breach of contract claim is indeed independent of its declaratory judgment claim in that it is "alone sufficient to invoke the court's subject matter jurisdiction and can be adjudicated without the requested declaratory relief." Rarick, 852 F.3d at 228 (quotation omitted). See also 4431, Inc. v. Cincinnati Ins. Cos., Civ. A. No. 20-4396, 2020 WL 7075318, at *5 (E.D. Pa. Dec. 3, 2020) (concluding that restaurant companies' breach of contract claims against their insurance company seeking payment for losses related to COVID-19 Orders were independent of those plaintiffs' claims seeking a declaration that the insurance company was obligated to provide insurance coverage for those losses); Wilson v. Hartford Cas. Co., 492 F. Supp. 3d 417, 425 (E.D. Pa. 2020) ("This Court has held multiple times that legal claims are independent of claims for declaratory relief when applying Rarick to insurance coverage disputes." (citing Cont'l Cas. Co. v. Westfield Ins. Co., Civ. A. No. 16-5299, 2017 WL 1477136, at *4-5 (E.D. Pa. Apr. 24, 2017);

Schodle v. State Farm Mut. Auto. Ins. Co., Civ. A. No. 17-407, 2017 WL 1177133, at *2 (E.D. Pa. Mar. 30, 2017))).

Having determined that Plaintiff's legal claim is independent of its declaratory judgment claim, we must determine whether there are exceptional circumstances that warrant remanding this action as described in Colorado River.[1] Rarick, 852 F.3d at 228. In Colorado River, the Supreme Court explained that "'[a]bdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.'" Colorado River, 424 U.S. at 813 (quoting Cty. of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-189 (1959)). Those exceptional circumstances include "where there have been presented difficult questions of state

---

[1] "The Colorado River doctrine allows a federal court to abstain, either by staying or dismissing a pending federal action, when there is a parallel ongoing state court proceeding." Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 307 (3d Cir. 2009) (citing Colorado River, 424 U.S. 800 (1976)). There is some non-binding authority that suggests that we cannot remand this action pursuant to the second step of the Rarick independent claim test even if we find that there are exceptional circumstances because there are no parallel state proceedings. See Wilson, 492 F. Supp. 3d at 425 (considering Rarick's application to a removed case and stating that Colorado River's "[e]xceptional circumstances do not apply here since there are no parallel pending state court proceedings"); 4431, Inc., 2020 WL 7075318, at *5 (applying Rarick's "independent claim test" to determine whether removed insurance action asserting both declaratory judgment and breach of contract claims should be remanded and expressing doubt that Colorado River applied at the second step of the independent claim test because there was no parallel state proceeding (citing Wilson, 492 F. Supp. 3d at 425)). However, Rarick does not instruct that a removed case that asserts both declaratory and independent legal claims may only be remanded if abstention would be warranted under Colorado River. Rather, it adopted the independent claim test used in the Seventh and Ninth Circuits, which states that independent legal claims must be adjudicated "unless there are exceptional circumstances *as described in* Colorado River." Rarick, 852 F.3d at 228 (emphasis added) (citing R.R. St., 569 F.3d at 716-17). Thus, the Third Circuit directs us to consider whether this case, which has been removed from state court, presents exceptional circumstances, not whether we should abstain from hearing Plaintiff's claims in this forum in favor of parallel state proceedings in accordance with the Colorado River doctrine.

7

law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." Id. at 814.

"In diversity cases such as this, federal courts must apply state law." Greg Prosmushkin, P.C. v. Hanover Ins. Grp., 479 F. Supp. 3d 143, 150 (E.D. Pa. 2020). "Where the state law issue(s) being presented are novel, federal courts are tasked with having to predict how state courts would decide the issue(s)." Id. Pennsylvania law regarding whether commercial insurance policies must cover losses resulting from COVID-19 related governmental orders pursuant to their business income, extra expense, and civil authority coverages is, at this time, unsettled. As the court noted in The Scranton Club v. Tuscarora Wayne Mutual Group, Inc., No. 20CV2469, 2021 WL 454498 (Lackawanna Cty. Ct. of Common Pleas Jan. 25, 2021), "[r]egrettably, there currently is no appellate precedent in Pennsylvania addressing insurance coverage disputes arising from business losses caused by governmental closure orders in the wake of COVID-19." Id. at *9 (sustaining preliminary objections to plaintiff's claims seeking a declaration that it was entitled to business income, extra expense, and civil authority coverages arising from losses caused by government COVID-19 closure orders).[2] Moreover, three months ago, when that decision was issued, "the dearth of state trial court rulings either ha[d] not yet addressed the merits of the parties' coverage arguments, or ha[d] not provided any analysis or reasoning in support of their decisions." Id. See also Venezie Sporting Goods, LLC v. Allied Ins. Co. of Am., Civ. A. No. 20-1066, 2020 WL

---

[2] We note that, in May 2020, "the Supreme Court of Pennsylvania . . . denied a King's Bench petition to consolidate COVID-19 business interruption litigation in favor of the development of the applicable legal principles in the state trial courts and then as applicable in the state intermediate appellate courts." Venezie Sporting Goods, LLC v. Allied Ins. Co. of Am., Civ. A. No. 20-1066, 2020 WL 5651598, at *5 (W.D. Pa. Sept. 23, 2020) (referring to Joseph Tambellini, Inc. v. Erie Ins. Exch., 234 A.3d 390 (Pa. 2020)); see also Joseph Tambellini, Inc., 234 A.3d 390 (denying emergency application for extraordinary relief pursuant to Pennsylvania Rule of Appellate Procedure 3309, 42 Pa. Stat. § 726 and King's Bench Powers).

5651598, at *4 (W.D. Pa. Sept. 23, 2020) (remanding a declaratory judgment action seeking a declaration that the plaintiff's COVID-19 related losses were covered by its commercial insurance policy to state court because, inter alia, "'the Pennsylvania courts' have yet to develop 'the contours' of insurance coverage and exclusion disputes arising from the impacts of the COVID-19 pandemic" (quoting Ewart v. State Farm Mut. Auto. Ins. Co., 257 F. Supp. 3d 722, 725 (E.D. Pa. 2017)) (add'l citation omitted). Indeed, we have identified only a few additional Court of Common Pleas decisions weighing on this issue, one of which concludes that coverage exists, one of which noted that the law is evolving regarding insurance coverage of COVID-19 related business losses, and one of which concludes that there is no coverage or that coverage is excluded. See, e.g., Ungarean, DMD v. CNA, No. GD-20-006544, 2021 WL 1164836, at *8-10 (Allegheny Cty. Ct. Common Pleas Mar. 25, 2021) (granting plaintiff's motion for summary judgment and concluding that plaintiff, a dentist, was entitled to coverage under the business income and extra expense and civil authority provisions of his CNA insurance policy for losses incurred as a result of Governor Wolf's COVID-19 Orders); Taps & Bourbon on Terrace, LLC v. Underwriters at Lloyds London, No. 00375, 2020 WL 6380449, at *1 (Philadelphia Cty. Ct. Common Pleas Oct. 26, 2020) (overruling defendant's preliminary objections to plaintiffs' insurance coverage action arising from "denial of insurance coverage for business losses as a result of the COVID-19 pandemic and the resulting state and local orders mandating that all non-essential businesses be temporarily closed" because, inter alia, "the law and facts are rapidly evolving in the area of COVID-19 related business losses"); Isaac's at Spring Ridge, LLP v. MMG Ins. Co., No. C1-20-3613, order (Lancaster Cty. Ct. Common Pleas Mar. 2, 2021) (dismissing claim for insurance coverage for business income losses suffered as a result of COVID-19 related government orders because plaintiff's all-risk commercial insurance policy excluded "coverage for loss or damage

caused by or resulting from a virus," the requirements for civil authority coverage were not met, and there was no direct physical loss or damage to plaintiff's premises (internal quotation marks omitted)); appeal filed, 455 MDA 2021 (Pa. Super. Ct. Apr. 16, 2021).

We find that "[i]nsurance liability related to the COVID-19 pandemic is likely to be the subject of a significant number of cases in Pennsylvania state court" and that "clarifying whether or not certain language in insurance policies creates coverage for losses due to COVID-19 will impact a significant portion of the population operating businesses of all kinds throughout the Commonwealth." Promushkin, 479 F. Supp. 3d at 151. As the Venezie Sporting Goods court noted, "it is undeniable that the COVID-19 pandemic presents a complex and novel factual situation," 2020 WL 5651598, at *5. Moreover, "the resulting legal disputes are deeply tied to Pennsylvania public policy, as well as the intricacies of Pennsylvania insurance contract interpretation, such that the Court believes it is most appropriate to 'step back' in this instance." Id. (quoting Reifer, 751 F.3d at 146)).

Clearly, "[t]he public has an interest in a resolution of an insurer's [obligation to provide coverage for losses arising from the COVID-19 pandemic] under Pennsylvania law." Ewart, 257 F. Supp. 3d at 725. "That interest will be better served by awaiting the Pennsylvania Supreme Court's pronouncement rather than issuing a federal district court's predictive decision, which will have no binding effect on Pennsylvania courts." Id. The Third Circuit has recognized that, "[i]n order to maintain the proper relationship between federal and state courts, it is important that district courts 'step back' and allow the state courts the opportunity to resolve unsettled state law matters." State Auto Ins. Cos. v. Summy, 234 F.3d 131, 136 (3d Cir. 2000). The Promushkin Court recognized that the state insurance law issues at the center of this case are "novel, complex, . . . unsettled" and "of obvious gravity." Promushkin, 479 F. Supp. 3d at 150. The Venezie

Sporting Goods Court concluded that "[b]ased on the uncertain status of currently nascent COVID-19 business interruption litigation in Pennsylvania and the concern for 'circumstance-specific determinations' without a clear body of settled state case law, . . . Pennsylvania bears a significant public interest in resolving the uncertainty of the obligations presented in its own courts." Venezie Sporting Goods, 2020 WL 5651598, at *5. We are persuaded by our colleagues' analysis and conclude that this case "present[s] difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case . . . at bar." Colorado River, 424 U.S. at 814. We further conclude, accordingly, that there are exceptional circumstances as described in Colorado River that warrant remanding this action notwithstanding our "virtually unflagging obligation to exercise . . . jurisdiction." Id. at 817. We therefore grant the Motion to Remand.

BY THE COURT:

/s/ John R. Padova
_____
John R. Padova, J.